IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
**LENICK CONSTRUCTION, INC.**            :         Civil Action No. 14-2701
                                        :
      v.                                  :
                                        :
**SELECTIVE WAY INSURANCE**              :
**COMPANY**                              :
_____:

**MEMORANDUM OPINION**

**Rufe, J.**                                                     **March 23, 2016**

      Before the Court is a breach of contract action, filed by insured Lenick Construction, Inc., seeking a judgment that the company from which it purchased a commercial insurance policy, Selective Way Insurance Company, has a duty to provide a defense and indemnification in state court litigation. There are three motions presently before the Court: 1) Lenick's Motion for Summary Judgment on Selective's duty to provide a defense and pay fees incurred to date in the underlying state court litigation; 2) Selective's Motion for Summary Judgment on the issue of its duty to provide a legal defense to Lenick in the underlying suit; and 3) Selective's Motion for Summary Judgment on its duty to indemnify Lenick if it is found liable in the underlying state court litigation.

**I.    PROCEDURAL HISTORY AND SUMMARY OF STIPULATED MATERIAL FACTS**

      The Villas at Packer Park Condominium Association ("Villas") entered into a contract with Westrum Park Place, under which Westrum and related entities (together "Westrum") were to serve as the general contractor in the construction of a 92-unit condominium development project in Philadelphia. Westrum utilized a number of subcontractors, including Lenick. Lenick was subcontracted to perform rough and finish carpentry work for the Villas, and installed paneling, windows, and doors provided by the developer.

On February 28, 2013, after the project was completed, the Villas filed the underlying lawsuit against Westrum in state court, alleging that the owners of the units at the Villas have discovered material construction defects and breaches of warranty in the construction of the units. The defects are alleged to have caused water infiltration into the units, leaks throughout the units, and cracks in the drywall in the units. Westrum joined various subcontractors and suppliers as defendants in the underlying lawsuit, including Lenick, and filed a joinder complaint against the subcontractors.

To cover potential commercial liability, Lenick purchased commercial insurance policies and umbrella excess policies from Defendant Selective over a number of years. The policy in effect during the relevant time period requires Selective to provide a defense and indemnification in certain types of civil lawsuits against the insured. On October 24, 2013, Lenick contacted Selective, and requested a defense and indemnification in the underlying lawsuit. Selective initially denied the request, by letter dated January 27, 2014, but on December 4, 2014, Selective agreed to defend Lenick in the underlying action, subject to a reservation of its right to challenge its obligation to do so under the relevant policy. Lenick then filed this action, seeking a declaratory judgment as to Selective's duty to defend and indemnify it in the underlying lawsuit, under the applicable insurance policies.

The parties' Stipulation of Material Facts[1] sets forth the pertinent terms of the relevant insurance contracts. To summarize, Lenick's Selective policy requires Selective to pay

> those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages. . . to which this insurance does not apply. . . .[2]

---

[1] Doc. No. 24.

[2] Doc. No. 24 at 12.

The insurance applies only to property damage that "is caused by an 'occurrence,'"[3] (defined as an accident) during the policy period, and does not apply to "that particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it."[4] It also does not apply to "'property damage' to 'impaired property' . . . arising out of: 1) a defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work.'"[5] The umbrella policy includes an exclusion for property damage to the "particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."[6]

## II. DISCUSSSION

Selective argues that because any liability Lenick will face has arisen from its own faulty workmanship, in breach of its subcontractual duties, the property damage at issue was not caused by an "occurrence," and thus is not covered by the Selective policy.

### A. Duty to Defend

Under Pennsylvania law, the insurer has a duty to defend the insured if the complaint in the underlying case alleges facts that support recovery under the policy. "In determining the existence of a duty to defend, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured."[7] "'[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been

---

[3] Doc. No. 24 at 12.

[4] Doc. No. 24 at 13.

[5] See Doc. No. 24 at 14. "Impaired property" is defined as tangible property other than the insured's work or product, that is less useful because it incorporates the insured's work or product.

[6] Doc. No. 24 at 18.

[7] *Nationwide Mutual Insur. Co. v. CPB Intern'l, Inc.,* 562 F.3d 591, 595-96 (3d Cir. 2009) (internal quotation and citation omitted).

3

triggered. Instead it is necessary to look at the factual allegations contained in the complaint.'"[8] If *any* claim in the underlying lawsuit is potentially covered, the insurance company must defend all claims, until such time as the action is confined to claims that are not covered.[9]

On April 14, 2014, Lenick filed this action in state court, seeking a declaratory judgment as to Selective's duty to defend and indemnify it in the underlying litigation. The case was removed to this Court on May 12, 2014.[10] The Court must examine the terms of the policy, the factual allegations, and the procedural history of the underlying claims in order to assess the merits of the motions regarding Selective's duty to provide a defense.

The underlying complaint initially asserted claims only against the general contractor, Westrum, and not against Lenick or any other subcontractors. Westrum filed a joinder complaint on October 7, 2013 (followed by a number of amended joinder complaints), which named Lenick and others, in a suit for breach of contract, breach of express and implied warranties, common law and contractual indemnification, and negligence.[11] *Inter alia*, Westrum's joinder complaint alleged that pursuant to its contract with Westrum Construction, Lenick Construction agreed to: 1) "comply with all applicable building codes and regulations and other ordinances and laws applicable to rough and finish carpentry"; 2) "indemnify Westrum Construction for any and all damages, costs, expenses, and losses Westrum Construction incurs as a result of fines, penalties, and corrective measures resulting from Lenick Construction's failure to comply with the code, regulations, and laws"; and 3) "perform its rough and finish carpentry work in a proper and

---

[8] *Schuylkill Stone Corp. v. State Auto. Mut. Ins. Co.*, 735 F. Supp. 2d 150, 155 (D.N.J. 2010) (quoting *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (1999), and applying Pennsylvania law).

[9] *CPB Intern'l,* 562 F.3d at 596.

[10] The Court determined that it had diversity jurisdiction over this dispute after reviewing supplemental information regarding the Notice of Removal. See Doc. No. 5 and 6.

[11] Doc. No. 30-6.

workmanlike manner, in strict accordance with the contract documents."[12] Westrum further alleged that Lenick's workmanship was defective and did not meet the standards required by the contract, and that its defective workmanship was the cause of the water infiltration into the units. Lenick filed preliminary objections to the joinder complaints. On June 10, 2014, the court in the underlying case ruled on the objections to the Third Amended Joinder Complaint,[13] and held that Westrum's claims were in contract, not in tort, and dismissed the common law indemnity claims, the breach of express and implied warranty claims, and the negligence claim, from the Third Amended Joinder Complaint, leaving the breach of contract and contractual indemnification claims.[14]

On December 10, 2013, after Westrum joined the subcontractors and suppliers to the suit, the Villas amended its complaint to add its own claims against the subcontractors. The Villas asserted a single claim against Lenick and the other joined subcontractor defendants, alleging breach of implied warranty.[15] The Villas alleged that Lenick and other subcontractors had failed to construct the units in a good and workmanlike manner, and further alleged that the work did not comply with the Philadelphia Building Code and did not conform to the approved building plans. That is, all of the factual allegations indicated that liability was premised upon defective workmanship. The underlying court dismissed the Villas' breach of implied warranty claim

---

[12] Doc. No. 30-6 at ¶¶ 45-47.

[13] Objections to the earlier joinder complaints were dismissed as moot.

[14] Doc. No. 30-14. The breach of express and implied warranty claims were dismissed without prejudice, and Westrum was given 20 days to file an amended complaint with regard to those claims. However, Westrum failed to amend.

[15] Doc. No. 30-5.

against the subcontractors, including Lenick, on June 3, 2014.[16] On June 23, 2014, the underlying case was stayed, so that the parties could attempt mediation.[17]

On December 4, 2014, Selective agreed to defend Lenick in the underlying matter, subject to a reservation of rights. Although Lenick's defense has been provided by Selective since that date, Lenick is seeking reimbursement for $37,677.56 related to its defense in the underlying action, for the period October 22, 2013 through December 2, 2014. Lenick also seeks a declaratory judgment that Selective has an ongoing obligation to provide a defense.

In 2015, the Villas reached a settlement agreement with Westrum in the underlying case. As part of that agreement, Westrum assigned to the Villas its breach of contract and contractual indemnification claims against the subcontractors, including Lenick. Subsequently, the Villas filed the Second Amended Complaint, on October 7, 2015, and then the Third Amended Complaint, on December 4, 2015, asserting claims against the subcontractors. Because the motions for summary judgment were already fully briefed when the Second Amended Complaint was filed, the Court asked for supplemental briefing on this issue. After the Court made that request, but before the supplemental briefs were due, the Villas filed the Third Amended Complaint. The supplemental briefs addressed the allegations in the Third Amended Complaint. The Court must examine the factual allegations in the Third Amended Complaint to determine whether Selective is under an obligation to provide a defense after December 2015.

With regard to Lenick, the Third Amended Complaint alleges claims, as assignee for Westrum, for: 1) breach of contract, by failing to construct the project according to the terms of its contract; 2) breach of implied warranty, as Lenick warranted that its work would be

---

[16]Doc. No. 30-12.

[17]The case was initially stayed through December 1, 2014, but the stay was later extended several times, through August 2015.

constructed in a good and workmanlike manner and be fit for habitation; and 3) contractual indemnity. As an assignee and on its own behalf, the Villas also asserted a negligence claim against Lenick, alleging that Lenick violated its duty of care in performing work on the project, causing damage to its own work and the work of others. The Villas does not identify any extra-contractual source of a duty to perform the construction in a workmanlike manner in the Third Amended Complaint.

Selective argues that both the Villas' Third Amended Complaint against Lenick and the earlier joinder complaints against Lenick are simply claims for poor workmanship in breach of contract. As such, Selective argues, the events alleged do not constitute "occurrences" under the general liability policy or the umbrella policy, and fall under the "your work" exclusion to coverage. Selective argues that Lenick has failed to establish that any provision of the relevant insurance policy would require coverage; for example, Lenick does not argue that it hired any subcontractors to perform work on Lenick's behalf.

The parties agree that if the underlying claims against Lenick only alleged that Lenick produced defective work due to poor workmanship in breach of its contractual obligations, causing damage to its own work, the applicable insurance policy would not provide for a defense or indemnification.[18] However, from the time the joinder complaint was filed, on October 7, 2013, until the preliminary objections were ruled upon, in June 2014, the joinder complaint did also include a negligence claim. The Third Amended Complaint also includes a negligence claim. In addition, Lenick argues that its liability is not premised only on need to repair and replace its own work, but also on damage that Lenick's faulty work caused to the work of others.

---

[18] *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006) (where an underlying suit avers property damage from poor workmanship to the work product itself, there is no duty to provide a defense or indemnify an insured).

The negligence claims in the joinder complaint were dismissed in June 2014 by the underlying court, with the finding that all the claims arose from the contract between the parties. This Court also finds that while Westrum's joinder complaints did assert claims against Lenick in both contract and tort, it was clear from the facts alleged in the joinder complaint that the duties alleged to be breached were duties based in the contract between the parties.[19] Thus, the Court holds that the mere pleading of a negligence claim, unsupported by factual allegations of negligence, was not sufficient to give rise to a duty to defend.  Similarly, although the Third Amended Complaint asserts a negligence claim, all claims against Lenick are still premised on factual allegations of defective or faulty workmanship.

With regard to Lenick's argument that the underlying joinder complaint and the Third Amended Complaint did not only allege that Lenick's own work was deficient, but that its defective work caused damage to the work of others, the Court agrees that this is a plausible reading of the underlying complaints. However, where liability is premised upon poor workmanship, the fact that nearby work was also damaged does not change the analysis, so long as such damage is reasonably foreseeable.[20] It is foreseeable that windows and doors which are not watertight will cause water damage inside the unit, to parts of the unit other than the

---

[19] Lenick argues that this Court may not conduct a "gist of the action" analysis, as that doctrine does not govern an analysis of the insurance company's duty to defend. *Citing Indalex, Inc. v. Nat'l Union Fire Insur. Co. of Pittsburgh, PA,* 83 A.3d 418 (Pa. Super. 2013). However, the Court need not conduct a "gist of the action" analysis in this case, because the court presiding over the underlying lawsuit has concluded that the relevant joinder complaints could only assert claims based in contract, and dismissed the negligence and other common law claims. This Court merely finds that, even before the underlying court ruled on the preliminary objections, it was apparent from the face of the relevant complaints that although the joinder complaint *characterized* certain claims as arising in tort, the factual allegations indicated that all the claims arose out of the contracts between the parties.

[20] *Millers Capital Insur. Co. v. Gambone Brothers Development Co., Inc.*, 941 A.2d 706, 713 (Pa. Super. 2007) (relying on the analysis in *Kvaerner,* the Superior Court held that "natural and foreseeable acts, such as rainfall, which tend to exacerbate the damage, effect, or consequences caused *ab initio* by faulty workmanship also cannot be considered sufficiently fortuitous to constitute an "occurrence" or "accident" for the purposes of an occurrence based CGL policy.").

windows and doors. Accordingly, these additional allegations do not give rise to a duty to defend.

Lenick also argues that the underlying complaint does not exclusively allege that Lenick's faulty workmanship was the cause of the water problems the owners experienced. Indeed, the Third Amended Complaint suggests that the problems with the units could (also or instead) be attributed to: 1) poor design and/or a lack of guidance from the project architects; 2) inadequate or faulty materials provided to Lenick by third parties for installation; or 3) damage to Lenick's otherwise non-defective work which was caused by the faulty work of other contractors or subcontractors (e.g. the stucco subcontractor). In these scenarios, Lenick argues, it is possible that Lenick fulfilled his contractual obligations and produced satisfactory work, but the faulty work of others led to the later failure of Lenick's work and resulting water damage to the property of the underlying plaintiff. Thus, Lenick argues that the faulty work of others can be considered an "occurrence" or "accident," from Lenick's perspective, and if liability arises from an occurrence, Selective must provide a defense and indemnification for any liability. However, while it is true that the complaints assert that other contractors or subcontractors may be liable for the water damage to underlying plaintiff's property, they do not allege that Lenick should be held liable (in negligence or under any other theory) for the faulty products or poor workmanship of others. Lenick's own faulty workmanship is the only legal theory under which *Lenick*, as opposed to other contractors or subcontractors, could be found liable for the property damage to the units. There are no facts alleged to support a tort claim against Lenick.

Therefore, because allegations of faulty workmanship in performance of a contract, without more, are not an "occurrence" under the relevant Selective policy, the Court agrees that

9

Selective is not obligated to pay the pre-tender defense costs, and has no duty to provide an ongoing defense to Lenick in the underlying lawsuit.[21]

### B. Duty to Indemnify

With regard to Selective's duty to indemnify Lenick, that duty is triggered when a claim against an insured is *actually* within the scope of the policy's coverage. Above, the Court held that the asserted claims are not *potentially* within the scope of the policy's coverage. This is decisive of the issue of whether it is actually within the scope of the policy's coverage.[22] Accordingly, the Court also holds that Selective has no duty to indemnify Lenick for any liability in the underlying suit.

### C. Bad Faith

Lenick also asserts that Selective acted in bad faith in denying benefits under the policy. To succeed on a statutory bad faith claim under Pennsylvania law,[23] the insured must show that the insurer breached its duty of good faith and fair dealing. Lenick alleges that Selective denied benefits under the policy without a reasonable basis for doing so, and knew or recklessly disregarded the lack of reasonable basis when denying the claim. The Court disagrees. For the reasons set forth above, and in light of the underlying court's dismissal of all claims not grounded in contract, the Court finds that Selective's interpretation of the pleadings was not made with knowing or reckless disregard of whether the denial of coverage was reasonable.

## III. CONCLUSION

---

[21] *Kvaerner,* 908 A.2d at 896; *Gambone,* 941 A.2d at 713; *Westfield Ins. Co. v. Bellevue Holding Co.*, 856 F. Supp. 2d 683, 695 (E.D. Pa. 2012).

[22] "Because the duty to defend is broader, a finding that it is not present will also preclude a duty to indemnify." *Kvaerner Metals Div.,* 908 A.2d at 896, n.7.

[23] 42 Pa. C.S.A. § 8371.

For the reasons set forth herein, Selective's Motions for Summary Judgment on the issues of defense costs and fees and duty to indemnify will be granted, and Lenick's Motion for Summary Judgment on the issue of Selective's duty to defend will be denied. An appropriate Order follows.